NO. 07-01-0287-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JUNE 18, 2002

_____

KERRY LAYNE ZEEK, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 31st DISTRICT COURT OF GRAY COUNTY;

NO. 6043; HONORABLE STEVEN R. EMMERT, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Upon a plea of not guilty, a jury convicted appellant Kerry Layne Zeek of possession of a controlled substance with intent to deliver and answered affirmatively on use of a deadly weapon. Punishment was assessed at 60 years and a $10,000 fine. Presenting two points of error, appellant contends (1) the evidence is insufficient to prove he knowingly possessed methamphetamine or a deadly weapon, and (2) he was denied

reasonably effective assistance of counsel in violation of the Constitutions of Texas and the United States. Based upon the rationale expressed herein, we reform the judgment to delete the affirmative finding of a deadly weapon and, as reformed, we affirm.

Appellant was a passenger in a car driven and owned by Frank Pechacek. Appellant did not know Pechacek, but testified that friends had arranged for him to get a ride home to Pampa from Amarillo with Pechacek. While en route, appellant fell asleep, but was awoken by Pechacek in Pampa to get directions. Detective Conner, a K-9 officer, testified that on August 23, 2000, in a section of Pampa known as Prairie Village, a high crime area, he stopped Pechacek for a minor traffic violation. After Pechacek consented to a search of the car, methamphetamine was found in a plastic baggy on the center console. A further search by the K-9 dog led to the discovery of a black shaving bag containing more methamphetamine and drug paraphernalia, as well as an unloaded .22 caliber pistol located in a duffle bag.

At the time of the stop appellant was not under the influence of drugs and did not have any contraband on his person. According to the arresting officer, appellant did not have a wallet, driver's license, nor money on his person, but did have a set of car keys and a daily planner. Appellant acknowledged that initially, he gave the officer his wife's name and date of birth, but explained he did so because of an outstanding arrest warrant. Appellant otherwise denied any knowledge of the contents of the bags and pistol before the stop.

2

By his first issue, appellant contends the evidence is insufficient to prove he knowingly possessed methamphetamine or that he used a deadly weapon. Interpreting his contention to be a challenge to the legal sufficiency of the evidence, we will review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime as alleged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 157 (Tex.Cr.App. 1991), *overruled on other grounds*, Paulson v. State, 28 S.W.3d 570, 573 (Tex.Cr.App. 2000). It is a fundamental rule of criminal law that one cannot be convicted of a crime unless it is shown beyond a reasonable doubt that the defendant committed each element of the alleged offense. U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2002); Tex. Pen. Code Ann. § 2.01 (Vernon 1994). As an appellate court, we may not sit as a thirteenth juror, but must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Cr.App. 1988).

Before determining whether the evidence is legally sufficient to sustain the conviction, we must review the essential elements the State was required to prove. In order to establish unlawful possession of a controlled substance with intent to deliver, the State was required to prove that appellant exercised actual care, custody, control, or management of the contraband and that he knew the substance he possessed was contraband. *See* Tex. Health & Safety Code Ann. § 481.112(d) (Vernon Supp. 2002); Tex.

3

Health & Safety Code Ann. § 481.002(38) (Vernon 1992); King v. State, 895 S.W.2d 701, 703 (Tex.Cr.App. 1995) (en banc); Martin v. State, 753 S.W.2d 384, 387 (Tex.Cr.App. 1988). These elements may be proved by circumstantial evidence. McGoldrick v. State, 682 S.W.2d 573, 578 (Tex.Cr.App. 1985). Intent to deliver may be proved by circumstantial evidence, including the evidence surrounding its possession and the quantity of contraband possessed. Reece v. State, 878 S.W.2d 320, 325 (Tex.App.–Houston [1st Dist.] 1994, no pet.). Further, the State was required to prove that appellant used or exhibited a deadly weapon during the commission of the offense charged. Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp. 2002).

Appellant was not the owner or driver of the car in which the contraband was discovered; thus, he was not in exclusive control. Humason v. State, 728 S.W.2d 363, 365-66 (Tex.Cr.App.1987). Mere presence near the contraband was insufficient to establish possession. *McGoldric*k, 682 S.W.2d at 578. Thus, the State was required to establish an affirmative link between appellant and the contraband. *Id*; Gilbert v. State, 874 S.W.2d 290, 297 (Tex.App.--Houston [1st Dist.] 1994, pet. ref'd). "Affirmative links" as explained by the Court in Brown v. State, 911 S.W.2d 744 (Tex.Cr.App. 1995), is simply a shorthand expression of what must be proven to establish that an accused possessed some kind of contraband knowingly or intentionally, and is used to evaluate the sufficiency of the evidence. Davis v. State, 923 S.W.2d 781, 786 (Tex.App.--Beaumont 1996), *rev'd on other grounds*, 947 S.W.2d 240 (Tex.Cr.App. 1997). Although a list of affirmative links

4

is not exhaustive, some additional facts tending to establish affirmative links include: (1) an amount of contraband large enough to indicate the accused knew of its existence; Carvajal v. State, 529 S.W.2d 517, 520 (Tex.Cr.App. 1975) *cert. denied*, 424 U.S. 926, 96 S.Ct. 1139, 47 L.Ed.2d 336 (1976); Ortiz v. State, 930 S.W.2d 849, 853 (Tex.App.--Tyler 1996, no pet.); (2) the accused was the owner and driver of the vehicle where the contraband was found; (3) the contraband was found on the same side of the seat as the accused was sitting; (4) the contraband was in an enclosed place; (5) paraphernalia to use the contraband was in view of the accused; and (6) occupants of the vehicle gave conflicting statements; *see* Autran v. State, 830 S.W.2d 807, 811 (Tex.App.--Beaumont 1992), *rev'd on other grounds*, 887 S.W.2d 31 (Tex.Cr.App. 1994); Whitworth v. State, 808 S.W.2d 566, 569 (Tex.App.--Austin 1991, pet. ref'd).  Further, in Williams v. State, 902 S.W.2d 505, 507 (Tex.App.--Houston [1st Dist.] 1994, pet. ref'd), the court held that in addition to the above factors, the defendant's possession of a large amount of cash could also be considered as circumstantial evidence of intent to deliver a controlled substance. Appellant had no cash on him at the time of his arrest.  Moreover, law enforcement officials did not attempt to connect appellant to the contraband or the weapon by fingerprints.

Joint possession is not established by the mere presence at a place where contraband is found.  Underwood v. State, 571 S.W.2d 7, 9 (Tex.Cr.App. 1978). Appellant's status as a passenger in the car did not justify a finding of joint possession of the contraband. *McGoldrick*, 682 S.W.2d at 574.  As suggested by the State, we will focus

5

our attention to direct evidence connecting appellant to the bags, contraband, and weapon rather than affirmative links. The State contends that Pechacek's voluntary handwritten statement constitutes direct evidence establishing appellant's guilt. By his handwritten statement, Pechacek, while giving an account of the directions given by appellant implicated appellant to the bags, contraband, and weapon. Among other things, the statement recites:

> While turning, [appellant] made observation of a police car coming toward us. And -- and said be cool . . . . Just a couple blocks I told [appellant] I was just going to drop him and his stuff (bags, daytimer, etc.) off . . . and
>
> * * *
>
> As I turned, the officer behind me, turned his lights on and pulled me over. As I stopped, [appellant] got very nervous and started acting funny.

Considering the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the crime as alleged beyond a reasonable doubt. Point of error one is overruled.

By his second point of error, appellant contends he was denied reasonably effective assistance of counsel in violation of the Constitutions of Texas and the United States. We agree to the extent explained herein. To establish ineffective assistance of counsel, appellant must show that (1) counsel's performance was deficient (*i.e.*, fell below an objective standard of reasonableness), and (2) there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different,

6

a reasonable probability being a probability sufficient to undermine confidence in the outcome. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Cr.App. 1986).

The adequacy of defense counsel's assistance is based upon the totality of the representation rather than by isolated acts or omissions of trial counsel. Garcia v. State, 887 S.W.2d 862, 880 (Tex.Cr.App. 1994), *cert. denied*, 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995). Although the constitutional right to counsel ensures the right to reasonably effective counsel, it does not guarantee errorless counsel whose competency or accuracy of representation is to be judged by hindsight. Ingham v. State, 679 S.W.2d 503, 509 (Tex.Cr.App. 1984); *see also* Ex Parte Kunkle, 852 S.W.2d 499, 505 (Tex.Cr.App. 1993). A strong presumption exists that defense counsel's conduct falls within a wide range of reasonable representation. *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2064, 80 L.Ed.2d at 695; Dewberry v. State, 4 S.W.3d 735, 757 (Tex.Cr.App. 1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). To sustain a challenge of ineffective assistance, it must be firmly founded in the record, Mercado v. State, 615 S.W.2d 225, 228 (Tex.Cr.App. 1981), and the defendant must overcome the presumption that counsel's conduct might be considered sound trial strategy. Jackson v. State, 877 S.W.2d 768, 771 (Tex.Cr.App. 1994). After proving error, a defendant must also affirmatively demonstrate prejudice. *Garcia*, 887 S.W.2d at 880. Failure to make the

required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id*.

Specifically, appellant faults trial counsel for:

- failing to object to the court's excusal of venirewoman Veazey for cause;

- failing to prepare and present mitigation evidence at the punishment phase to provide the jury with an alternative to a lengthy prison term; and

- introducing a statement of Frank Pechacek, the owner and driver of the vehicle, that tenuously connected appellant to the contraband.

Because the first two complaints are acts of omission rather than commission and are not fully developed in the record, we will direct our attention to the third allegation that counsel's conduct fell short of the reasonable standard of performance.

As reflected by the court's charge, the judge instructed the jury that a person commits an offense if he *knowingly or intentionally possesses with intent to deliver* a controlled substance. The court then defined terms and instructed the jury as follows:

"Possession" means actual care, custody, control or management of the controlled substance.

With respect to the "possession" charged, you are instructed that such possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control.

8

* * *

> The term "deliver" as used herein, means the actual or constructive transfer from one person to another of a controlled substance, whether or not there is an agency relationship.

* * *

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist.

As above noted, because appellant was only the passenger and was not in exclusive control of the car, the State had to affirmatively link appellant to possession of the contraband with intent to deliver.[1]

During the guilt/innocence phase while Officer Morris, a task force agent who had received evidence from Officer Conner, was on the stand, defense counsel offered an unsworn two-page handwritten hearsay statement, portions of which were illegible, made by Pechacek. This offer prompted the State to object to the statement on hearsay grounds. Notwithstanding the State's objection, defense counsel persisted in seeking admission of the hearsay statement. Although the State withdrew its objection and defense counsel should have been alerted that the State may have considered the statement favorable to its position, Morris read it to the jury, including the following excerpts:

---

[1]Without possession, a person cannot deliver contraband. However, possession does not necessarily establish intent to deliver.

9

[Appellant] told me turn left, I did.  Just a couple of blocks I told him I was just going to drop him and *his stuff* off at the *. . . .*

* * *

I could drop of him and *his stuff* and then return home . . . .

(Emphasis added).  Although appellant testified that he did not have any luggage or bags when he made the trip to Pampa, by his statement, Pechacek made two specific references to appellant's "stuff."  In addition to connecting appellant to the "stuff" in the hearsay statement, Pechacek also described appellant as acting nervous and funny when the officer made the stop.

The State suggests that counsel's introduction of the hearsay statement was sound trial strategy corroborating appellant's punishment phase evidence.  We disagree because the statement was introduced during the guilt/innocence phase.  Further, whether counsel introduced the entire statement during guilt/innocence because it was partially illegible or because counsel simply failed to carefully read the entire statement is not controlling.  We conclude that counsel's introduction of Pechacek's statement constituted deficient performance.

Having determined that counsel's performance was error, we must decide whether there is a reasonable probability that but for counsel's error, the result of the trial would have been different.  We commence our review by focusing on the rule that a determination of the adequacy of counsel's assistance is based upon the totality of the

10

representation rather than by isolated acts or omissions of trial counsel. *Garcia*, 887 S.W.2d at 880. Although in Ex Parte Dunham, 650 S.W.2d 825, 826-27 (Tex.Cr.App. 1983) (en banc), counsel was found ineffective in one isolated instance, his conduct prompted the client to waive his right to a jury trial knowing that the waiver was not in the client's best interest. Also, *Ex Parte Dunham* was determined in a habeas corpus proceeding where the record was fully developed. In Jackson v. State, 766 S.W.2d 504, 509 (Tex.Cr.App. 1985), *overruled on other grounds*, Ex Parte Cruz, 739 S.W.2d 53, 59 n.1 (Tex.Cr.App. 1987), the Court determined that counsel's single act constituted ineffective assistance where it resulted in the client's waiver of a valuable statutory right. Here, however, reviewing the record as a whole, we find that appellant did not waive a valuable constitutional or statutory right by counsel's deficient performance. Thus, we are unable to conclude that the result of the proceeding would have been different due to counsel's isolated act. Appellant's second point of error is overruled.

Demonstrating commendable professional candor, during oral argument, the State conceded that the deadly weapon finding should be disregarded because it was not submitted to the jury until the charge on punishment. *See* Tex. Code Crim. Proc. Ann. art. 37.07(4) (Vernon Supp. 2002); *see* Hill v. State, 913 S.W.2d 581, 586 (Tex.Cr.App. 1995). Accordingly, we reform the judgment of the trial court to delete the deadly weapon finding. Banks v. State, 708 S.W.2d 460, 462 (Tex.Cr.App. 1986).

11

Accordingly, the judgment of the trial court is reformed to delete the affirmative finding of a deadly weapon and, as reformed, is affirmed.


Don H. Reavis
Justice


Johnson, J., concurring in result only.


Do not publish.